IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GIVENS MACLIN,<br>individually and as a representative of<br>the class,<br><br>     Plaintiff,<br><br>  vs.<br><br>ATLANTIC PERSONNEL & TENANT<br>SCREENING, INC. (dba "ATLANTIC<br>EMPLOYEE SCREENING"), KGMADE<br>LLC (dba "KGM TECHNOLOGIES"),<br>MICRO TECH STAFFING OF<br>CHARLOTTE, INC., and VERIFIED<br>FIRST, LLC.<br><br>     Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | COMPLAINT – CLASS ACTION |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Givens Maclin ("Plaintiff"), by and through his attorneys Brown, LLC and

The Orlando Firm, P.C., on behalf of himself and the classes set forth below, brings

the following Class Action Complaint against Atlantic Personnel & Tenant

Screening, Inc. (dba "Atlantic Employee Screening"), KGMade LLC (dba "KGM

Technologies"), Micro Tech Staffing of Charlotte, Inc., and Verified First, LLC, and

alleges as follows:

## PRELIMINARY STATEMENT

1.     This putative Fed. R. Civ. P. 23 class action is brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Defendants willfully violated the provisions of the FCRA pertaining to procurement of consumer reports from consumer reporting agencies for employment purposes, resulting in the procurement of two separate consumer reports pertaining to Plaintiff without his knowledge or authorization, and resulting in his employment being terminated without him having any opportunity to dispute or explain the information in those reports.

2.     Plaintiff Givens Maclin is a former employee of Defendant KGMade LLC ("KGM"), a Georgia company specializing in firearm suppressors and other firearm-related technologies.

3.     Defendant Micro Tech Staffing of Charlotte, Inc. ("Micro Tech") is a staffing company that hired Plaintiff to work for KGM at its factory in Peachtree Corners, Georgia.

4.     Defendants Atlantic Personnel & Tenant Screening, Inc. ("AES") and Verified First, LLC ("Verified First") are companies that compile and furnish employee and/or consumer credit reports. Defendants AES and Verified First are both "consumer reporting agenc[ies]" as defined under the FCRA because they "regularly engage[] in whole or in part in the practice of assembling or evaluating

2

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

5.      Recognizing that peoples' jobs depend on the accuracy of consumer reports, Congress has chosen to regulate the procurement, use and content of such background checks through the FCRA. 15 U.S.C. § 1681. The FCRA contains several provisions which pertain specifically to the use of consumer reports for employment purposes.

6.      First, § 1681b(b)(2) sets forth the conditions under which persons may procure consumer reports from consumer reporting agencies for employment purposes:

> (2) Disclosure to consumer
>
> (A) In general
> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

(the "Disclosure and Authorization Requirement").

7.    Second, § 1681b(b)(3)) sets forth the conditions under which a person

may take adverse action based on a consumer report procured for employment

purposes:

> (A)In general
> Except as provided in subparagraph (B), in using a consumer report
> for employment purposes, before taking any adverse action based in
> whole or in part on the report, the person intending to take such
> adverse action shall provide to the consumer to whom the report
> relates—
> (i)a copy of the report; and
> (ii)a description in writing of the rights of the consumer under this
> subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of
> this title.

(the "Adverse Action Requirement"). § 1681a(k)(1)(B)(ii) defines "adverse action"

in part as a "denial of employment or any other decision for employment purposes

that adversely affects any current or prospective employee."

8.    Finally, 15 U.S.C. § 1681b(b)(1) sets forth the conditions under which

"consumer reporting agencies" (i.e. Defendants AES and Verified First) may

furnish consumer reports for employment purposes:

> (1)Certification from user
> A consumer reporting agency may furnish a consumer report for
> employment purposes only if—
> (A)the person who obtains such report from the agency certifies to the
> agency that—
> (i)the person has complied with paragraph (2) with respect to the
> consumer report, and the person will comply with paragraph (3) with
> respect to the consumer report if paragraph (3) becomes applicable….

(the "Certification Requirement"). Thus, the Certification Requirement requires consumer reporting agencies, before furnishing consumer reports for employment purposes, to confirm that the person procuring the report has complied with the Disclosure and Authorization Requirement and will comply with the Adverse Action Requirement.

9.     Defendant KGM willfully violated the Disclosure and Authorization Requirement by procuring consumer reports about Plaintiff and other job applicants and employees without the required written disclosure or authorization, and is thus liable under the FCRA to Plaintiff and the putative "KGM Disclosure and Authorization Class," defined to include "all individuals who were the subject of a consumer report that was procured or caused to be procured by KGM for employment purposes within the period of five (5) years prior to the filing of the complaint through the date of judgment."

10.    Defendant Micro Tech willfully violated the Disclosure and Authorization Requirement by procuring consumer reports about Plaintiff and other job applicants and employees without first providing the required standalone written disclosure or obtaining written authorization before obtaining the reports. As a result, Micro Tech is liable under the FCRA to Plaintiff and the putative "Micro Tech Disclosure and Authorization Class," defined to include "all individuals who were the subject of a consumer report that was procured or

caused to be procured by Micro Tech for employment purposes within the period of five (5) years prior to the filing of the complaint through the date of judgment."

11.     Defendant KGM willfully violated the Adverse Action Requirement by taking adverse employment action against Plaintiff and other job applicants and employees based on information contained in their consumer reports without first providing them with a copy of the report and a summary of their rights under the FCRA. As a result, KGM is liable under the FCRA to Plaintiff and the putative "KGM Adverse Action Class," defined to include "all individuals to whom KGM denied employment based on information contained in a consumer report within the period of five (5) years prior to the filing of the complaint through the date of judgment."

12.     Defendant Micro Tech willfully violated the Adverse Action Requirement by taking adverse employment action against Plaintiff and other job applicants and employees based on information contained in their consumer reports without first providing them with a copy of the report and a summary of their rights under the FCRA. As a result, Micro Tech is liable under the FCRA to Plaintiff and the putative "Micro Tech Adverse Action Class," defined to include "all individuals to whom Micro Tech denied employment based on information contained in a consumer report within the period of five (5) years prior to the filing of the complaint through the date of judgment."

13. Defendant AES willfully violated the Certification Requirement by furnishing consumer reports about Plaintiff and other job applicants and employees to employers without first obtaining certification that the procurer of the report had provided the required disclosure and obtained written authorization before procuring the report. As a result, AES is liable under the FCRA to Plaintiff and the putative "AES Certification Requirement Class," defined to include "all individuals who were the subject of a consumer report for employment purposes that was furnished by AES within the period of five (5) years prior to the filing of the complaint through the date of judgment."

14. Defendant Verified First willfully violated the Certification Requirement by furnishing consumer reports about Plaintiff and other job applicants and employees to employers without first obtaining certification that the procurer of the report had provided the required disclosure and obtained written authorization before procuring the report. As a result, Verified First is liable under the FCRA to Plaintiff and the putative "Verified First Certification Requirement Class," defined to include "all individuals who were the subject of a consumer report for employment purposes that was furnished by Verified First within the period of five (5) years prior to the filing of the complaint through the date of judgment."

15.     Based on Defendants' conduct, Plaintiff asserts FCRA claims on behalf of himself and the classes defined, of which he intends to seek certification pursuant Fed. R. Civ. P. 23(a) and (b)(3). On behalf of himself and the classes, Plaintiff seeks statutory damages and/or actual damages, punitive damages, attorneys' fees, litigation costs, and all other available relief.

## PARTIES

16.     Defendant KGMADE LLC, doing business as KGM Technologies, is a company specializing in firearm suppressors and other firearm-related technologies.

17.     KGMADE LLC is incorporated in Georgia, with its principal business address at 4900 Avalon Ridge Parkway, Peachtree Corners, GA 30071.

18.     KGMADE LLC's registered agent is Kyle McKee Grob, located at 4900 Avalon Ridge Parkway, Peachtree Corners, GA 30071.

19.     Defendant Micro Tech Staffing of Charlotte, Inc., doing business as Micro Tech Staffing, is a staffing agency that provides workforce solutions to client employers across various industries, including KGM.

20.     Micro Tech Staffing of Charlotte, Inc. is incorporated in North Carolina, with its principal business address at 207 Regency Executive Park Drive, #140, Charlotte, NC 28217-2651.

21.    Micro Tech Staffing of Charlotte, Inc.'s registered agent is Frances Donahue, located at 207 Regency Executive Park Drive, Suite #140, Charlotte, NC 28217-2651.

22.    Defendant Atlantic Personnel & Tenant Screening, Inc., doing business as Atlantic Employee Screening, is a background check and employment screening company offering services such as criminal history checks and drug testing.

23.    Atlantic Personnel & Tenant Screening, Inc. is incorporated in Florida, with its principal business address at 8895 N. Military Trail, #301D, Palm Beach Gardens, FL 33410.

24.    Atlantic Personnel & Tenant Screening, Inc.'s registered agent is Greenspoon Marder LLP, located at 200 E. Broward Blvd, Suite 1800, Fort Lauderdale, FL 33301.

25.    Defendant Verified First, LLC, doing business as Verified First, is a background screening company that provides pre-employment background checks, drug testing, and other verification services.

26.    Verified First, LLC is incorporated in Idaho, with its principal business address at 1120 S. Rackham Way, #300, Meridian, ID 83642.

27.    Verified First, LLC's registered agent is Emily Wolff, located at 1120 S. Rackham Way, #300, Meridian, ID 83642.

28.    Plaintiff Givens Maclin is and was at all relevant times a resident of Gwinnett County, Georgia.

## JURISDICTION AND VENUE

29.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

30.    The Court has personal jurisdiction over Defendant KGM because it is domiciled in Georgia.

31.    The Court has personal jurisdiction over Defendant Micro Tech under O.C.G.A. § 9-10-91(1) and (3) because it transacts business within the state by recruiting, hiring, and placing workers for employment opportunities in Georgia, including the Plaintiff's employment placement, and has an office in the state at 1395 S Marietta Pkwy SE, Bldg. 100 Ste 106, Marietta, GA, 30067. Further, Micro Tech Staffing caused tortious injury in Georgia by committing acts outside of Georgia when it unlawfully obtained, ordered, and disseminated Plaintiff's background check without authorization, which directly resulted in Plaintiff being deprived of information he was entitled to receive under the FCRA, his privacy being invaded without his knowledge or consent, and the termination of his employment.

32.    The Court has personal jurisdiction over Defendant AES under O.C.G.A. § 9-10-91(3) because it caused tortious injury in Georgia by an act

10

committed outside the state. Defendant obtained, prepared, and provided an unauthorized background check report on Plaintiff to an employer in Georgia. The report was instrumental in Plaintiff's termination from employment within the state. Additionally, Defendant derives substantial revenue from performing background screening services for Georgia-based employers, establishing sufficient minimum contacts with the state to warrant jurisdiction.

33.    The Court has personal jurisdiction over Defendant Verified First under O.C.G.A. § 9-10-91(3) because it caused tortious injury in Georgia by an act committed outside the state. Verified First prepared and provided an unauthorized background report on Plaintiff to a Georgia employer, which directly resulted in Plaintiff's termination from employment in Georgia. Additionally, Verified First engages in business within Georgia by offering background screening services to employers located in the state and derives substantial revenue from these activities.

34.    Venue is proper in this District because a substantial portion of the acts giving rise to this action occurred in this District.

## **FACTUAL ALLEGATIONS**[1]

35.    KGM procures consumer reports (or causes consumer reports to be procured) for employment purposes without first providing the required disclosure and obtaining written authorization from the consumer.

36.    KGM fails to provide job applicants and employees with a clear and conspicuous written disclosure in a standalone document stating that a consumer report may be obtained for employment purposes.

37.    Instead, KGM fails to provide any clear and conspicuous disclosure at all or includes the disclosure within other employment documents that contain unrelated information, in violation of 15 U.S.C. § 1681b(b)(2).

38.    KGM takes adverse employment action against job applicants and employees based on information contained in consumer reports.

39.    KGM takes adverse employment action against job applicants and employees based on information contained in consumer reports without first providing them with a copy of the report and a summary of their rights under the FCRA, in violation of 15 U.S.C. § 1681b(b)(3).

---

[1] Other than as specifically stated, the foregoing allegations reference the time period of five (5) years preceding the commencement of this action through the present.

40.    Micro Tech procures consumer reports (or causes consumer reports to be procured) for employment purposes without first providing the required disclosure and obtaining written authorization from the consumer.

41.    Micro Tech fails to provide job applicants and employees with a clear and conspicuous written disclosure in a standalone document stating that a consumer report may be obtained for employment purposes.

42.    Instead, Micro Tech fails to provide any clear and conspicuous disclosure at all or includes the disclosure within other employment documents that contain unrelated information, in violation of 15 U.S.C. § 1681b(b)(2).

43.    Micro Tech takes adverse employment action against job applicants and employees based on information contained in consumer reports.

44.    Micro Tech takes adverse employment action against job applicants and employees based on information contained in consumer reports without first providing them with a copy of the report and a summary of their rights under the FCRA, in violation of 15 U.S.C. § 1681b(b)(3).

45.    AES is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f), because it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information, including criminal history, on consumers for the purpose of furnishing consumer reports to third parties (such as employers and staffing agencies) for monetary fees,

and uses means and facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, including the mail and internet.

46.    At least up until part of October 2024, AES had a contract with KGM to furnish consumer reports for the purpose of KGM evaluating persons' qualification for employment.

47.    AES furnishes consumer reports for employment purposes without first obtaining certification from the requesting employer that the employer has complied with the FCRA's Disclosure and Authorization Requirement.

48.    AES fails to confirm that employers have provided job applicants and employees with a clear and conspicuous written disclosure in a standalone document and obtained their written authorization before procuring the report, in violation of 15 U.S.C. § 1681b(b)(1).

49.    Verified First is a "consumer reporting agency," as defined in 15 U.S. Code § 1681a(f), because it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information, including criminal history, on consumers for the purpose of furnishing consumer reports to third parties (such as employers and staffing agencies) for monetary fees, and uses means and facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, including the mail and internet.

14

50.    At least up until part of October 2024, Verified First had a contract with Micro Tech to furnish consumer reports for the purpose of Micro Tech and its clients (including KGM) evaluating persons' qualification for employment.

51.    Verified First furnishes consumer reports for employment purposes without first obtaining certification from the requesting employer that the employer has complied with the FCRA's Disclosure and Authorization Requirement.

52.    Verified First fails to confirm that employers have provided job applicants and employees with a clear and conspicuous written disclosure in a standalone document and obtained their written authorization before procuring the report, in violation of 15 U.S.C. § 1681b(b)(1).

53.    In or around early October 2024, Micro Tech contacted Plaintiff in response to information he had submitted on a general job application website, to solicit him to apply for employment with KGM at its factory in Peachtree Corners, Georgia.

54.    Micro Tech arranged a job interview for Plaintiff with Bryan McKinney, KGM's Machine Shop Manager, which took place on October 7, 2024.

55.    On October 7, 2024, Micro Tech procured (or alternatively, caused to be procured) a consumer report about Plaintiff from Verified First in order to

evaluate Plaintiff's qualification for employment at KGM, despite not having his authorization.

56.    On October 8, 2024, KGM procured (or alternatively, caused to be procured) a separate consumer report about Plaintiff from AES in order to evaluate Plaintiff's qualification for employment at KGM, despite not having his authorization.

57.    On October 8, 2024, Plaintiff received a welcome email from Jessica Tarpley, Compliance Specialist at KGM..

58.    The welcome email began with Ms. Tarpley stating "Congratulations on your new position with KGM Technologies – we are excited to have you as part of the team!  There are a few things to take care of before your hire date of 10/11/2024."

59.    The welcome email outlined various pre-employment requirements, including I-9 employment verification, drug testing through Atlantic Screening, ADP Workforce registration, and Employee Navigator benefit enrollment.

60.     However, the welcome email did not include any reference to a consumer report and/or background check.

61.    AES administered a drug test on Plaintiff on October 8, 2024, and informed KGM that Plaintiff passed the drug test on October 10, 2024.

62.    On October 9, 2024, Plaintiff received and signed an offer letter from KGM, which is attached hereto as Exhibit 1.

63.    Micro Tech's and KGM's procurement of Plaintiff's consumer reports was in willful violation of the Disclosure and Authorization Requirement notwithstanding the language in Plaintiff's offer letter "[t]his offer is contingent upon completion of a satisfactory background check and drug test."

64.    Micro Tech procured (or alternatively, caused to be procured) a consumer report on Plaintiff from Verified First on October 7, 2024, before Plaintiff received or signed the offer letter, in violation of the requirement in § 1681b(b)(2)(A)(i) that the disclosure occur "before the report is procured or caused to be procured."

65.    KGM procured (or alternatively, caused to be procured) a consumer report on Plaintiff from AES on October 8, 2024, before Plaintiff received or signed the offer letter, in violation of the requirement in § 1681b(b)(2)(A)(i) that the disclosure occur "before the report is procured or caused to be procured."

66.    The sentence in the offer letter "[t]his offer is contingent upon completion of a satisfactory background check and drug test" did not constitute a "a clear and conspicuous disclosure" to Plaintiff that his "consumer report may be obtained for employment purposes…." § 1681b(b)(2)(A)(i).

67.     Even if that sentence did constitute a clear and conspicuous disclosure, which is did not, it was not made "in a document that consists solely of the disclosure," § 1681b(b)(2)(A)(i), but was rather contained in the offer letter, which also contained information about unrelated topics like Plaintiff's pay rate, a non-disclosure agreement, benefits, vacation/sick time, and reimbursement of business expenses.

68.     As a result, the offer letter failed to effectively inform Plaintiff that a consumer report about him was going to be or potentially going to be procured for employment purposes.

69.     When Plaintiff signed the offer letter, he was unaware that a consumer report about him was going to be or potentially going to be procured for employment purposes.

70.     Had the offer letter effectively informed Plaintiff that a consumer report about him was going to be or potentially going to be procured for employment purposes, he would not have signed it.

71.     Plaintiff's signing of the offer letter was not an authorization in writing to the procurement of a consumer report by any person.

72.     Accordingly, KGM and Micro Tech willfully violated the Disclosure and Authorization Requirement.

73.     On October 10, 2024, Lia Felcyn, an employee of Micro Tech, called Plaintiff and informed him that he had passed his drug and background test and directed him to report for work at KGM on October 11, 2024.

74.     Plaintiff began working at KGM on October 11, 2024, as a CNC Machine Operator. His job duties included operating and maintaining CNC machines, performing precision measurements, and ensuring production standards were met.

75.     Plaintiff worked a total of three shifts at KGM, from October 11 to October 13, 2024, without any indication that his employment was in jeopardy. During these shifts, no one from KGM or Micro Tech informed him of any issue with his employment status or that a consumer report had been procured about him.

76.     On October 14, 2024, AES furnished a consumer report about Plaintiff to KGM.

77.     The report included the results of a social security address trace that AES performed on October 8, 2024, and compiled details regarding Plaintiff's criminal history that AES compiled on October 14, 2024 by conducting a nationwide search of public records, and thus related to Plaintiff's character, general reputation, and personal characteristics, for purposes of the FCRA's definition of "consumer report." 15 U.S.C. § 1681a(d)(1).

19

78.    When AES furnished Plaintiff's consumer report to KGM, KGM had not certified to AES that had complied with the Disclosure and Authorization Requirement with respect to Plaintiff's consumer report or that it would comply with the Adverse Action Requirement.

79.    Accordingly, AES willfully violated the Certification Requirement.

80.    When AES furnished Plaintiff's consumer report to KGM, Plaintiff had not received a clear and conspicuous disclosure in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes.

81.    When AES furnished Plaintiff's consumer report to KGM, Plaintiff was still unaware that a consumer report about him was going to be or potentially going to be procured for employment purposes.

82.    On October 15, 2024, Verified First furnished a consumer report about Plaintiff to Micro Tech.

83.    The report included the results of a social security address trace that Verified First performed on October 7, 2024, and compiled details regarding Plaintiff's criminal history that Verified First compiled on October 15, 2024 by conducting a seven-year search of public records in Georgia, and thus related to Plaintiff's character, general reputation, and personal characteristics, for purposes of the FCRA's definition of "consumer report." 15 U.S.C. § 1681a(d)(1).

84. When Verified First furnished Plaintiff's consumer report to Micro Tech, Micro Tech had not certified to Verified First that had complied with the Disclosure and Authorization Requirement with respect to Plaintiff's consumer report or that it would comply with the Adverse Action Requirement.

85. Accordingly, Verified First willfully violated the Certification Requirement.

86. When Verified First furnished Plaintiff's consumer report to Micro Tech, Plaintiff had not received a clear and conspicuous disclosure in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes.

87. When Verified First furnished Plaintiff's consumer report to Micro Tech, Plaintiff was still unaware that a consumer report about him was going to be or potentially going to be procured for employment purposes.

88. On or shortly after October 14, 2024, Micro Tech and KGM decided to terminate Plaintiff's employment based on criminal history information discovered by AES in its nationwide search of Plaintiff's criminal history and included in the consumer report AES furnished to KGM.

89. The incident(s) of criminal history that led Micro Tech and KGM to terminate Plaintiff's employment were contained in the consumer report that AES

furnished to KGM, but was not contained in the consumer report that Verified First furnished to Micro Tech.

90.     On October 18, 2024, Plaintiff arrived to KGM for his shift and was informed that his employment was being terminated because he failed a background check.

91.     Plaintiff was not informed of or aware of what information in his background check was the basis for his termination or by who or from where the information had been obtained.

92.     Plaintiff was not provided with a copy of the consumer report that AES furnished to KGM when he was informed or his termination, and had not been provided with a copy of the consumer report beforehand.

93.     After Plaintiff was informed of his termination, he asked Jessica Tarpley, Compliance Specialist at KGM for a copy of the background check that had caused his termination. Ms. Tarpley initially refused to provide him with a copy and told him that it was not KGM's practice to provide copies of employee background checks.

94.     At Plaintiff's insistence, Ms. Tarpley eventually provided him with a copy of the consumer report furnished by AES on October 24, 2024.

95.     Ms. Tarpley did not indicate that KGM was willing to reconsider its decision to terminate his employment.

96.    Accordingly, KGM and Micro Tech willfully violated the Adverse Action Requirement.

97.    Defendants' violations of the Disclosure and Authorization Requirement, Adverse Action Requirement, and Certification Requirement were and are willful, contrary to a reasonable reading of the FCRA's terms, and occurred because the Defendants recklessly ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

98.    Alternatively, Defendants' violations of the Disclosure and Authorization Requirement, Adverse Action Requirement, and Certification Requirement were and are negligent.

99.    When Plaintiff contacted Verified First and AES after learning of his termination, both background screening companies admitted that neither KGM nor Micro Tech could produce an authorization form signed by Plaintiff. Verified First and AES stated that they had asked the requesting employers for a copy of Plaintiff's signed authorization, and neither KGM nor Micro Tech could provide it.

100.    On October 25, 2024, AES' Vice President Erin Rodriguez sent Plaintiff a letter confirming that KGM had never obtained his written consent

before procuring the consumer report, and that AES had therefore instructed KGM
to delete any paper or electronic report copies it may have separately retained.

101.   Ms. Rodriguez's letter opined that KGM's failure to obtain Plaintiff's
written consent before procuring the consumer report was "disappointing and at
odds with Atlantic Employee Screening's contract with KGMade, among other
things."

102.   AES' decision to furnish Plaintiff's consumer report to KGM despite
KGM not having certified to AES that had complied with the Disclosure and
Authorization Requirement with respect to Plaintiff's consumer report or that it
would comply with the Adverse Action Requirement was not consistent with any
objective reasonable interpretation of the FCRA.

103.   Verified First's decision to furnish Plaintiff's consumer report to
Micro Tech despite Micro Tech not having certified to Verified First that had
complied with the Disclosure and Authorization Requirement with respect to
Plaintiff's consumer report or that it would comply with the Adverse Action
Requirement was not consistent with any objective reasonable interpretation of
the FCRA.

104.   Ms. Tarpley asserted to Plaintiff that his signing of the offer letter
from KGM constituted consent to the procurement of his consumer report, a
position that is objectively unreasonable under the FCRA given that the offer letter

24

did not contain a clear and conspicuous disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes.

105.    Courts have long recognized that the inclusion of extraneous information in a purported disclosure, like liability waivers or statements of state law, violate the Disclosure and Authorization Requirement because that text "pulls the applicant's attention away from [her] privacy rights." *Syed v. M-I, LLC*, 853 F.3d 492, 502 (9th Cir. 2017).

106.    It was also objectively unreasonable for Micro Tech and KGM to procure consumer reports relating to Plaintiff (or alternatively, to cause such reports to be procured) on October 7th and 8th of 2024, respectively, before he had received or signed the offer letter.

107.    Verified First and AES informed Plaintiff that they were considering terminating their business relationships with KGM and Micro Tech, respectively, due to their failure to obtain proper disclosures and authorizations.

108.    Verified First has been sued several times for alleged violations of the FCRA related to its furnishing of consumer reports for employment purposes.

109.    Micro Tech and KGM not only failed to provide Plaintiff with a copy of the consumer report furnished by AES before deciding to terminate his employment and informing him of that decision (as the FRCA requires), but also

refused to provide him with a copy despite his requests until October 24, 2024, six days after he was informed of his termination.

110.    Micro Tech and KGM's decision to refuse to provide Plaintiff with a copy of the consumer report furnished by AES six days after he was informed of his termination was not consistent with any objective reasonable interpretation of the FCRA.

111.    KGM and Micro Tech's willful violations of the Disclosure and Authorization Requirement caused injury to Plaintiff sufficient to confer standing under Article III of the United States Constitution.

112.    AES' and Verified First's willful violations of the Certification Requirement caused injury to Plaintiff sufficient to confer standing under Article III of the United States Constitution.

113.    The Disclosure and Authorization Requirement and Certification Requirement violations deprived Plaintiff of information he was entitled to receive under the FCRA before a consumer report about him was procured or caused to be procured, i.e. that a consumer report may be obtained for employment purposes.

114.    The deprivation of information from which Plaintiff suffered as a result of the Disclosure and Authorization Requirement violations further caused him to forgo other employment opportunities by proceeding under the false

impression that he had secured employment with KGM up until he was informed of his termination on October 18, 2024.

115.    The Disclosure and Authorization Requirement and Certification Requirement violations resulted in the Defendants accessing the information included in the consumer reports compiled and furnished by Verified First and AES, as to which Plaintiff had a right of privacy, without his knowledge or consent.

116.    Micro Tech and KGM's willful violations of the Adverse Action Requirement caused injury to Plaintiff sufficient to confer standing under Article III of the United States Constitution.

117.    The Adverse Action Requirement violations deprived Plaintiff of information he was entitled to receive under the FCRA before being subjected to adverse action based in whole or in part on the report, i.e. a copy of the report.

118.    When Plaintiff was informed of his termination on October 18, 2024, he had not been informed and was not aware of what information in his background check was the basis for his termination or by who or from where the information had been obtained.

119.    As a result, Plaintiff did not have the opportunity to dispute the accuracy of the consumer report that led Micro Tech and KGM to terminate his employment, or to otherwise explain its contents or their hearing on his employment qualifications.

## CLASS ACTION ALLEGATIONS

120.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of himself and the proposed KGM Disclosure and Authorization Class, Micro Tech Disclosure and Authorization Class, KGM Adverse Action Class, Micro Tech Adverse Action Class, AES Certification Requirement Class, and Verified First Certification Requirement Class, as defined above.

121.    The proposed classes are so numerous that joinder of all members is impracticable. Although the exact number of class members is unknown at this time, Plaintiff believes that there are hundreds or thousands of individuals in each class, based on the widespread use of consumer reports in employment screening and the nature of Defendants' business operations.

122.    There are questions of law and fact common to the proposed class members, including but not limited to:

a.    Whether Defendants procured or caused to be procured consumer reports on Plaintiff and class members without first providing a clear and conspicuous written disclosure in a standalone document and obtaining written authorization, in violation of 15 U.S.C. § 1681b(b)(2);

b.    Whether Defendants took adverse action against Plaintiff and class members based on consumer reports without first providing them with a

copy of the report and a summary of their FCRA rights, in violation of 15 U.S.C. § 1681b(b)(3);

      c.     Whether Defendants AES and Verified First furnished consumer reports to employers without first obtaining certification that the employer had complied with the Disclosure and Authorization Requirement and would comply with the Adverse Action Requirement, in violation of 15 U.S.C. § 1681b(b)(1);

      d.     Whether Defendants' violations of the FCRA were willful; and

      e.     The appropriate measure of statutory and punitive damages under the FCRA for class members.

123.   Plaintiff's claims are typical of the claims of the class members. Plaintiff and the class members were subjected to the same unlawful procurement, furnishing, and use of consumer reports in employment decisions, and they suffered similar legal injuries and damages as a result of Defendants' uniform violations of the FCRA.

124.   Plaintiff will fairly and adequately protect the interests of the classes.

125.   Plaintiff's interests are aligned with those of the proposed class members, and he has no interests antagonistic to their claims.

126.    Plaintiff has retained experienced counsel who are well-versed in complex class action litigation and FCRA claims and will vigorously prosecute this action on behalf of the class members.

127.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over any individual issues, and a class action is superior to other methods of adjudication.

128.    The common legal and factual questions identified above predominate over any individual questions that may arise, making class-wide resolution more efficient than piecemeal litigation.

129.    A class action is the superior method for fairly and efficiently adjudicating this controversy because, many class members lack the financial resources or knowledge to pursue individual claims, individual litigation would result in inconsistent rulings on the same legal issues, and a single class proceeding will conserve judicial resources and ensure uniform relief for similarly situated individuals.

**COUNT I**
**Violation of the Fair Credit Reporting Act (15 U.S.C. § 1681b(b)(2)) –**
**Disclosure and Authorization Requirement**
**(Brought by Plaintiff Individually and on Behalf of the KGM Disclosure and Authorization Class and the Micro Tech Disclosure and Authorization Class)**

130.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

131.    Defendants KGM and Micro Tech procured or caused to be procured consumer reports on Plaintiff and members of the KGM Disclosure and Authorization Class and the Micro Tech Disclosure and Authorization Class for employment purposes.

132.    Before obtaining consumer reports, Defendants KGM and Micro Tech failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure, stating that a consumer report may be obtained for employment purposes.

133.    Defendants KGM and Micro Tech also failed to obtain written authorization from Plaintiff and class members before procuring their consumer reports.

134.    As a result of Defendants' violations of 15 U.S.C. § 1681b(b)(2), Plaintiff and the members of the KGM Disclosure and Authorization Class and the Micro Tech Disclosure and Authorization Class suffered harm, including the unauthorized procurement of their personal and private information.

135.    Defendants' violations of 15 U.S.C. § 1681b(b)(2) were willful, entitling Plaintiff and class members to statutory damages of between $100 and $1,000 per violation, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

136.    Plaintiff and class members seek all available relief, including statutory and/or actual damages, punitive damages, attorneys' fees, and litigation costs.

**COUNT II**
**Violation of the Fair Credit Reporting Act (15 U.S.C. § 1681b(b)(1)) –**
**Certification Requirement**
**(Brought by Plaintiff Individually and on Behalf of the AES Certification**
**Requirement Class and the Verified First Certification Requirement Class)**

137.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

138.    Defendants AES and Verified First furnished consumer reports on Plaintiff and members of the AES Certification Requirement Class and the Verified First Certification Requirement Class to employers for employment purposes.

139.    Before furnishing these reports, AES and Verified First failed to obtain certification from the requesting employers (including KGM and Micro Tech) that the employer had provided the required written disclosure and obtained written authorization from Plaintiff and class members.

140.    AES and Verified First also failed to obtain certification that the requesting employer would comply with the Adverse Action Requirement before taking any adverse action against Plaintiff and class members based on their consumer reports.

32

141.    As a result of Defendants' violations of 15 U.S.C. § 1681b(b)(1), Plaintiff and class members suffered harm, including the unlawful furnishing of their private and personal consumer reports without proper authorization and compliance with FCRA safeguards.

142.    Defendants AES and Verified First acted willfully in failing to comply with 15 U.S.C. § 1681b(b)(1), entitling Plaintiff and class members to statutory damages of between $100 and $1,000 per violation, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

143.    Plaintiff and class members seek all available relief, including statutory and/or actual damages, punitive damages, attorneys' fees, and litigation costs.

**COUNT III**
**Violation of the Fair Credit Reporting Act (15 U.S.C. § 1681b(b)(3)) – Adverse Action Requirement**
**(Brought by Plaintiff Individually and on Behalf of the KGM Adverse Action Class and the Micro Tech Adverse Action Class)**

144.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

145.    Defendants KGM and Micro Tech used consumer reports in making employment decisions regarding Plaintiff and members of the KGM Adverse Action Class and the Micro Tech Adverse Action Class.

146.    Defendants KGM and Micro Tech took adverse action against Plaintiff and class members based in whole or in part on the information contained in their consumer reports.

147.    Before taking adverse action, Defendants KGM and Micro Tech failed to provide Plaintiff and class members with a copy of the consumer report on which the adverse action was based, in violation of 15 U.S.C. § 1681b(b)(3).

148.    Before taking adverse action, Defendants KGM and Micro Tech failed to provide Plaintiff and class members with a summary of their rights under the FCRA, depriving them of an opportunity to review, dispute, or explain the information in their reports.

149.    As a result of Defendants' violations of 15 U.S.C. § 1681b(b)(3), Plaintiff and class members suffered harm, including the loss of employment opportunities without the legally required notice and opportunity to contest the consumer reports used against them.

150.    Defendants KGM and Micro Tech acted willfully in failing to comply with 15 U.S.C. § 1681b(b)(3), entitling Plaintiff and class members to statutory damages of between $100 and $1,000 per violation, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

151.    Plaintiff and class members seek all available relief, including statutory and/or actual damages, punitive damages, attorneys' fees, and litigation costs.

## PRAYER FOR RELIEF

152.    WHEREFORE, Plaintiff, on behalf of himself and the class, prays for relief as follows:

(a)    Determining that this action may proceed as a class action under Rule 23(a) and `(b)(3) of the Federal Rules of Civil Procedure;

(b)    Designating Plaintiff as Class Representatives and designating Plaintiff's Counsel as counsel for the class;

(c)    Issuing proper notice to the class at Defendants' expense;

(d)    Declaring that Defendants committed multiple, separate violations of the FCRA;

(e)    Declaring that Defendants acted willfully, in deliberate or reckless disregard of Plaintiff's and class members' rights and Defendants' obligations under the FCRA;

(f)    Awarding actual, statutory and/or punitive damages as provided by the FCRA;

(g)    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

(h)   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the class demand a trial by jury.

Dated: April 10, 2025.                      THE ORLANDO FIRM, P.C.

By:   /s/ Roger Orlando
Roger Orlando
315 West Ponce De Leon Avenue, Suite 400
Decatur, GA 30030
T: (404) 373-1800
F: (404) 373-6999
roger@orlandofirm.com

*Local Counsel for Plaintiff*

Nicholas Conlon (to seek PHV)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5279
nicholasconlon@jtblawgroup.com

*Lead Counsel for Plaintiff*